IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CHARLES JAMES KARNES,

       Petitioner,

   v.

S. FRANK THOMPSON,

       Respondent.

Civil No. 10-238-PK

AMENDED
FINDINGS AND RECOMMENDATION

NELL BROWN
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR  97204

     Attorney for Petitioner

JOHN R. KROGER
Attorney General
ANDREW D. HALLMAN
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR  97301

     Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

PAPAK, Magistrate Judge.

Petitioner, Charles James Karnes ("Karnes"), an inmate at Mill Creek Correctional Facility, Oregon, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. He challenges his conviction and sentencing for Robbery in the First Degree and Assault in the First Degree. In an amended petition, Karnes alleges he was denied his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when the trial court failed to grant a continuance in order for a new attorney to prepare for trial; allowed the State to introduce hearsay statements; did not grant a judgment of acquittal; permitted him to be restrained by leg braces on the first day of trial; and failed to merge his convictions and imposed consecutive sentencing. Karnes also alleges numerous instances of ineffective assistance of trial counsel and that he is actually innocent. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#11) should be denied, and judgment should be entered dismissing this action with prejudice.

**BACKGROUND**

On April 11, 2001, Karnes was indicted on two counts of Robbery in the First Degree and one count of Assault in the First Degree stemming from acts occurring on or about February 22, 2001. (Respt.'s Ex. 102.) He was arraigned in August, 2001, appointed counsel, and his trial scheduled for October 24, 2001. (Respt.'s

Ex. 103 at 4.)   Counsel subsequently moved to withdraw, citing a conflict.   (Respt.'s Ex. 127.)   In a status conference on October 5, 2001, newly appointed counsel requested a continuance in order to prepare for trial.   (Respt.'s Ex. 103 at 6.)   Counsel noted that postponing trial would require Karnes to waive his rights under the state's sixty-day rule, *see* Or. Rev. Stat. 136.290, and that Karnes had not yet decided to do so.   (*Id.*)   Citing Or. Rev. Stat. 136.295, the State requested that a new trial date be set under the "good cause" exception to the sixty-day rule, identifying the State's need to arrange for out-of-state witnesses and newly appointed counsel's need for time to prepare for trial.   (*Id.* at 8-10.)   The trial court granted the State's motion and rescheduled the trial.   (*Id.*)

A subsequent status conference was held November 23, 2001, with the prosecutor, appointed counsel, and an attorney, Mr. Ahmed, from a firm with whom the Karnes family had deposited funds for the defense, participating.   (Respt.'s Ex. 104.)   Karnes was not present.   Mr. Ahmed made it clear his firm had not yet agreed to represent Karnes, and would only do so if the court granted a continuance to allow sufficient time to prepare for trial, at the time scheduled to begin on December 4, 2001.   (Respt.'s Ex. 104 at 4-5.)   The State objected to a continuance based on the negative impact on arrangements made for out-of-state witnesses and a physician witness who cleared his appointment calendar.   (*Id.* at 2,

5-9.)  When the trial court asked if appointed counsel wanted to weigh in on the matter of a continuance, he indicated he was ready to go to trial and was simply awaiting the court's decision on the continuance to know whether or not he would be replaced by Mr. Ahmed. (*Id.* at 11.)  Mr. Ahmed raised the issue of Karnes being heard on the matter of a continuance.  When the court asked if Mr. Ahmed wanted the court to arrange for Karnes to be present, he reiterated he was not yet representing Karnes.  (*Id.* at 12-13.) The trial court ultimately decided not to bring Karnes to the proceeding and denied a continuance, referring to a *pro se* objection Karnes sent the court regarding its earlier continuance for good cause.  (*Id.* at 13; Respt.'s Ex. 125.)

Karnes was tried before a jury beginning on December 4, 2011. Among the State's witnesses was an employee of an athletic club, Mr. Tu, who testified: (1) the victim (Reid) walked into the club around 12:30 a.m. just as he was finishing his cleaning duties; (2) Reid was bleeding and repeatedly stated he was going to die and to call for help;  Reid lay on the floor bleeding and Mr. Tu called 911.  (Respt.'s Ex. 105, at 20-21.)  The State also called the responding officer, Baskett, to testify.  Outside the presence of the jury, the defense objected to some of the officer's anticipated testimony as hearsay.  (*Id.* at 37-38.)  The State argued the testimony fell under the excited utterance exception and that the victim did not remember making some of the statements. (*Id.*, at 38-

39.)  The trial court allowed Officer Baskett's testimony that, (1)
when he arrived at the club Reid was bleeding, semi-conscious, and
repeating "I'm going to die;" (2) when Officer Baskett asked who
had done this to him, Reid replied "B.J., Jamal Karnes, and  C.J.
Karnes;" Reid told him the assault occurred in the park, that his
assailants went to Crystal's house, and gave Crystal's address.
(*Id.* at 39-43.)  Officer Baskett also identified pictures he took
of Reid at the hospital.  (*Id.* at 67-68.)

The emergency room physician who treated Reid testified to
Reid's multiple injuries, deteriorating condition, and severe head
injuries which warranted contacting a neurosurgeon.   He also
testified the head injuries were life threatening and could
contribute to long-term emotional and cognitive impairment.  (*Id.*
at 145-162.)  Reid testified, in relevant part: (1) he could not
remember much about the evening of the assault; (2) he remembered
being with  Karnes and a few others for a few hours prior to going
to the park with them and that there was no hostility; (3)  he
remembered Karnes and Karnes' brother standing in front of him when
"everything in front of my eyes went white"; (4) when he awoke no
one was around, his jewelry and coat were gone, and he sought help.
(*Id.* at 123-129.)  He also identified items sold to a re-sale store
as among those he was wearing when he was assaulted.  (*Id.* at 125-
126.)

Jody Whetstone, an acquaintance of  Karnes, B.J., and Jamal,

testified in relevant part: (1) Jamal took a 2-foot club from Jody's home prior to going to the park, (*id.* at 54-55); (2) as he and Jamal walked to the park, Jamal talked about what was going to happen in the park, (*id.* at 56-57); (3) he stopped at the edge of the park while Jamal continued ahead, (*id.* at 57, 62);  (4) he heard someone getting hit and "a muffle like whimper" come from 100-250 yards away, he got scared and went home, (*id.* 57-58); (5) fifteen to twenty minutes later Jamal, B.J., and Karnes came to his home and he noticed his club was cracked; he also noticed they had a bat, they had jewelry and a jacket that he had previously seen on Reid, and B.J. had blood on his face. (*Id.* at 59-61; 63-64.)

Another acquaintance, McEntarffer, testified:  Karnes told him Reid had previously stolen some of his cds and he was mad;  B.J. and Jamal also seemed upset with Reid; B.J., Karnes, and Jamal met in his back bedroom for 5-10 minutes; Jamal then invited him to go to the park with them and Reid, but he declined; he was at Jody's apartment when  B.J., Karnes, and Jamal returned from the park; he noticed blood and left immediately; when he woke the next morning B.J., Karnes, and Jamal were staying in his apartment, he saw blood in his tub and bloody clothing in his bathroom; he immediately told the three to get their things and leave, before leaving himself. (*Id.* at 77-78; 81-84; 92-93; 95.)

Reid's girlfriend of several years testified to the lasting deterioration she had noticed in his hearing, memory, and emotions

6 - FINDINGS AND RECOMMENDATION -

since the assault. (*Id.* at 117-119.) She also identified pictures, taken several weeks prior to the assault, of Reid wearing his jewelry. (*Id.*)

Defense counsel moved for a judgment of acquittal at the close of the state's case arguing there was no direct evidence that Karnes assaulted or robbed Mr. Reid, or that he aided and abetted. (*Id.* at 163-65.) The State argued there was "sufficient evidence to go to the trier of fact of whether the defendant participated in such a way as to be an aider and abettor, at the very least . . . and the State has shown that he had motive, that he had opportunity, that he fled following the offense, that he was involved before, during and after the offense." (*Id.* at 166-67.) The trial court denied the motion for judgment of acquittal, ruling:

> Well, there's clearly more than enough evidence on the fact that a robbery occurred and that an assault occurred in Polk County on or about the alleged date. Then the question is going to become is there enough evidence for a jury to consider the defendant, [C.J.] Karnes's, involvement in there.
>
> You've got the testimony of Mr. Reid that Mr. Karnes was there at the time. You have a statement made that night to Mr. De [sic] that there was at least an inference there that Mr. Karnes - this Karnes did something to them.
>
> And then there were other witnesses, enough to make an inference in there -- true, there is no direct evidence of Mr. Karnes's involvement, but there is enough evidence there that the -- circumstantially that the jury could conclude of Mr. Karnes's involvement in these two crimes. So I will deny your motion.

(*Id.* at 167.)    The defense rested its case without presenting evidence.    (*Id.* at 168.)

The jury found Karnes guilty on one count of Robbery in the First Degree and one count of Assault in the First Degree. (*Id.* at 102.)    He was sentenced under Measure 11 to 135 months incarceration without the possibility of parole or early release through a combination of consecutive and concurrent terms. (Respt.'s Ex. 101.)  Karnes objected to the sentence for the record stating:    "I was not informed that the sentence could be run consecutive. ... [I]f I had been informed, that might have -- that might have changed my decision not to take a plea bargain if I had known that I could get more than 90 months."  (*Id.* at 213.)

Karnes directly appealed his conviction, raising as error under the Due Process Clause of the United States Constitution the trial court's failure to have him present during the November 23, 2001 status conference at which the issue of a continuance was raised, and raising as error the trial court allowing hearsay testimony of what the victim said to the police officer when asked "Who did this to you?" (Respt.'s Ex. 107.)  In his initial brief, appellate counsel relied on state law in arguing the hearsay claim. In a supplemental brief, counsel cited *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), decided while the appeal was pending.  (Respt.'s Ex. 108). Karnes also filed a *pro se* brief raising other claims of error.  The Oregon Court of Appeals

affirmed without opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 113, 112.)

Karnes filed for post-conviction relief ("PCR"). Appointed counsel filed an Amended Formal Petition raising numerous claims of ineffective assistance of counsel. (Respt.'s Ex. 114.) In a subsequent *pro se* Amended Formal Petition, Karnes raised multiple claims of ineffective assistance of appointed trial counsel, multiple claims of ineffective assistance of appellate counsel, and a number of claims against the prospective attorneys with whom his family had deposited funds for his defense. (Respt.'s Ex. 117.) In his PCR deposition, Karnes informed the State he was proceeding with the *pro se* PCR petition, and appointed counsel informed the State Karnes had just fired him and would be proceeding *pro se*. (Respt.'s Ex. 124 at 5-9.) Because no motion to withdraw had been filed, PCR counsel remained present during the deposition and was available to answer Karnes's questions as needed. Following a trial at which Karnes proceeded *pro se*, the PCR trial court denied relief on the record, and in a general judgment. (Respt.'s Exs. 130 at 11-13; 131.)

Karnes appealed the PCR trial court's decision. PCR appellate counsel filed a brief, and Karnes filed a *pro se* supplemental brief. The Oregon Court of Appeals denied relief without opinion, and the Oregon Supreme Court denied review. (Respt.'s Exs. 137, 136.)

9 - FINDINGS AND RECOMMENDATION -

In this habeas action, with the assistance of appointed counsel, Karnes filed an Amended Petition for Writ of Habeas Corpus raising the following seven grounds for relief.

> Ground One:   The trial court violated Petitioner's constitutional rights, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, including, but not limited to, the right to be heard, the right to be present, the right to counsel of one's choice, and the right to due process of law.
>
> Ground Two:   The trial court violated Petitioner's constitutional rights, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, when it allowed the State to introduce hearsay statements of the victim as "excited utterances" or "dying declarations." *See Crawford v. Washington*, 541 U.S. 36 (2004).
>
> Ground Three:   The trial court violated Petitioner's rights to due process of law, guaranteed by the Fourteenth Amendment to the United States Constitution, when it did not grant a judgment of acquittal.   *See Jackson v. Virginia*, 443 U.S. 307 (1979).
>
> Ground Four:   The trial court violated Petitioner's constitutional rights, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, including the right to due process of law, when it permitted him to be restrained or shackled in the presence of the jury and failed to make a record regarding the shackling issue.
>
> Ground Five:   The trial court violated Petitioner's rights to due process of law, as guaranteed by the Fourteenth Amendments to the United States Constitution, and to a jury trial as guaranteed by the Sixth Amendment to the United States Constitution, when it [failed to merge Petitioner's convictions and imposed a partially consecutive term of imprisonment.}
>
> Ground Six:   Trial and appellate counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendments to the Unites States Constitution in [15 particulars, listed as (a)-(o)].

> Ground Seven:   Petitioner seeks relief on the grounds
> that he is actually innocent of the crimes of which he
> stands convicted.  *See Schlup v. Delo*, 513 U.S. 298, 315-
> 16 (1995);  *Herrera v. Collins*, 506 U.S. 390 (1993).

(#11, Amended Pet. at 3-7.)

In this action, through counsel's Memorandum (#25) and Sur-Reply (#38), Karnes focuses on the following claims: (1) violation of his Sixth and Fourteenth Amendment rights to counsel of choice and to be present at critical stages of the criminal proceedings when the trial court excluded him from the November 23 continuance hearing; (2) violation of his Sixth Amendment right to the effective assistance of counsel when appointed counsel failed to safeguard his Sixth and Fourteenth Amendment rights to counsel of choice and to be present at the November 23 hearing; (3) violation of his Sixth and Fourteenth Amendment rights under *Crawford v. Washington* when the trial court allowed "the admission of Reid's hearsay statements as recounted by Officer Baskett's at trial."[1] (#25, at 14.)

Respondent argues Karnes has failed to meet his burden of proof on the grounds for relief not briefed in his memorandum and, therefore, is not entitled to relief on those claims.  (#29, at 1-2.)  Respondent further contends Karnes has procedurally defaulted

---

[1]Respondent identifies the claims argued in Karnes's memorandum as Ground One; Ground Two ; and Ground Six - claims (b)(counsel failed to object to petitioner's absence from the November 23 hearing) and (c)(counsel failed to take steps, including moving for a continuance at the November 23 hearing, to allow petitioner an opportunity to obtain retained counsel).

Grounds for Relief One and Two and has not satisfied the actual innocence exception to excuse procedural default. (*Id.* at 2-10.) Finally, Respondent argues all the claims raised in the brief were denied in state court decisions that are entitled to deference. (*Id.* at 10.)

## DISCUSSION

A petitioner seeking federal habeas relief bears the burden of showing the court he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004), *cert. denied* 545 U.S. 1165 (2005). Under § 2254(d), a petitioner must show that the adjudication of his claims on the merits in State court was: "1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

I.  Unargued Claims

Karnes fails to brief Grounds Three through Five, Grounds Six (a) and (d)-(o), and Ground Seven in his counseled supporting memorandum. Respondent argues Karnes has failed to meet his burden of proof as to these claims. The court has nevertheless reviewed the record as to these grounds for relief and determined that they would not entitle petitioner to relief. *See* 28 U.S.C. § 2248 ("The

allegations of a return to the writ of habeas corpus or of an
answer to an order to show cause in a habeas corpus proceeding, if
not traversed, shall be accepted as true except to the extent that
the judge finds from the evidence that they are not true.")  To the
extent the Court may construe Karnes's actual innocence argument to
excuse his procedural default as supporting his claim of actual
innocence in Ground Seven, as discussed below, the argument fails.

II.  Procedural Default

     Generally, a state prisoner must exhaust all available state
court remedies either on direct appeal or through collateral
proceedings before a federal court may consider granting habeas
corpus relief.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*,
526 U.S. 838, 842 (1999) (state courts must have an opportunity to
act on claims before they are presented in a federal habeas
petition).  A state prisoner satisfies the exhaustion requirement
by fairly presenting his claims to the appropriate state courts at
all appellate stages afforded under state law.  *Baldwin v.* Reese,
541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th
Cir. 2004); *Castillo v. McFadden*, 370 F.3d 882, 886 (9th Cir.
2004).  A claim is fairly presented when it apprises the state
court of the facts and legal theory upon which the claim is
premised.  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir.
2005); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999.)

     A state prisoner procedurally defaults federal claims if he

fails to raise them as federal claims in state court or if, in raising the claims, he fails to comply with applicable state procedural rules. *O'Sullivan*, 526 U.S. at 848; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). When a state court declines to address federal claims based on independent and adequate state procedural grounds, federal habeas review is precluded. *Coleman*, 501 U.S. at 729-32; *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003); *see also Castille v. Peoples*, 489 U.S. 346, 351 (1989) (claim presented in context in which merits will not be considered barring special circumstances is not fairly presented); *Casey*, 386 F.3d at 917. The State can successfully assert a procedural default defense to federal habeas review unless the prisoner can show both "cause" for the procedural default and actual prejudice, or the prisoner demonstrates that failure to consider the claims will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman*, 501 U.S. at 750; *Insyxiengmay*, 403 F.3d at 665.

Respondent contends that Karnes procedurally defaulted Ground One and Ground Two because the claims were un-preserved in the trial court and not reviewable as plain error when raised for the first time on direct appeal. (#12 at 7-9; #29.) In addition, Ground Two was not raised as a federal question to the Oregon Supreme Court. (*Id.*) Respondent further argues Karnes has not satisfied the actual innocence exception to excuse procedural

default.   (#29, at 9-10.)   For the following reasons, the Court agrees the claims in Grounds One and Two are procedurally defaulted and not reviewable by this Court.

A.   Ground One

Karnes alleges that the trial court violated his Sixth Amendment rights to be present when it held the November 23, 2001, hearing without him being present, and his Sixth Amendment rights to be represented by counsel of his choosing when it denied a continuance to allow a prospective attorney time to prepare for trial.   He concedes these federal claims were not raised to the trial court, but argues they were fairly presented and exhausted because the claims were raised as "error apparent on the face of the record on direct appeal, and again in his petition seeking review by the Oregon Supreme Court, in compliance with Oregon's procedural rules."   (#38, at 2.)   Karnes argues that because "both parties argued the merits of the constitutional issues, squarely presenting them to the Oregon Court of Appeals[,]" and the Oregon Court of Appeals affirmed without opinion and did not provide an explicit statement to the contrary, "the federal court must presume this decision to have been on the merits."   (#25, at 15-16.)   In making this argument, Karnes relies on *Harris v. Reed*, 489 U.S. 255, 263 (1989).

Under *Harris*, "federal courts on habeas corpus review of state prisoner claims ... will presume that there is no independent and

adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman*, 501 U.S. at 734-35. Here, the Oregon Court of Appeals affirmed the lower court without opinion. That decision does not "fairly appear[] to rest primarily on federal law or to be interwoven with federal law." Furthermore, in *Coleman*, the Supreme Court rejected a broader application of the *Harris* presumption to all habeas cases in which a petitioner presented federal claims in state court regardless of whether it appears the state court addressed them. *Id.* at 736-40 (predicate to presumption is that "it fairly appears that the state court rested its decision primarily on federal law" *quoting Harris*, at 261.) The Court finds Karnes's reliance on the *Harris* presumption to be misplaced since the predicate to the presumption is missing.

Karnes argues a claim raised as plain error is fairly presented and "preserved for federal review absent a statement by the state court that it refused to hear the issue based on an independent and adequate state procedural bar." (#38 at 2.) However, under Oregon law, "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may

consider an error of law apparent on the face of the record." ORAP 5.45(1)(2009);[2] *State v. Gornick*, 340 Or. 160, 130 P.3d 780 (2006)(failure to raise argument before trial court renders it un-preserved for appellate review). In *Travelers Indemnity v. American Insurance*, 278 Or. 193, 199, 563 P.2d 684 (1977)(citations omitted), the Oregon Supreme Court stated, "[w]e have consistently held that matters argued in appellant's brief, not presented to the circuit court, should not be considered on appeal absent special circumstances." In *Ailes v. Portland Meadows, Inc.*, 312 Or. 376, 381-82, 823 P.2d 956 (1991), the Oregon Supreme Court discussed what is required for the appellate courts to consider un-preserved errors under ORAP 5.45:

> [T]he error must be 'one of law'; [] it must be 'apparent' *i.e.*, the point must be obvious, not reasonably in dispute; and [] it must appear 'on the face of the record,' *i.e.*, the reviewing court must not need to go outside the record to identify the error or choose between competing inferences, and the facts constituting the error must be irrefutable.
>
> Even if the error meets that test, however, **the appellate court must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so**. *See State v. Brown*, 310 Or. [347, 355-56, 800 P.2d 259 (1990)](applying this method). This is not a requirement of mere form. A court's decision to recognize unpreserved or unraised error in this manner should be made with utmost caution. Such an action is contrary to the strong policies requiring preservation and raising of error. It also undercuts the established manner in which an appellate court ordinarily considers an issue, *i.e.*, through competing arguments of adversary

---

[2] The parties cite this rule as ORAP 5.45(2).

parties with an opportunity to submit both written and oral arguments to the court. Moreover, by *expressly* following the prescribed method of recognizing unpreserved or unraised error, much greater efficiency in the review process between appellate courts is facilitated by giving this court the benefit of the recognizing court's reasoning.

*Citing State v. Brown*, 310 Or. 347, 355-56, 800 P.2d 259 (1990)(bold added; emphasis in original.) The Oregon Supreme Court concluded that *an appellate court decision that "considers a claim of error without an express conclusion that the error is one of law apparent on the face of the record, and without an express statement of the basis for the discretionary consideration of the claim of error, is itself erroneous."* *Ailes,* at 382 (emphasis added).

Given Oregon's procedural rules, the Oregon Supreme Court's express holdings for what is required for appellate review of un-preserved error on the merits, and the absence an Oregon appellate court opinion satisfying those requirements, Karnes's arguments that his claims are preserved for federal habeas review cannot stand. The Court finds the claims in Grounds One were not fairly presented or exhausted in state courts.[3] Because Karnes can no

---

[3]This analysis and conclusion is consistent with other decisions issued by this Court. *See Smith v. Hill*, 2011 WL 1085263, *3-5 (D.Or. Mar. 22, 2011)(in affirming without opinion the Oregon Court of Appeals chose not to consider issue petitioner alleged was clear error; under Oregon law it is not plausible for un-preserved claim to be reviewed on the merits when Court of Appeals affirms without opinion); *Moore v. Mills*, 2010 WL 3656056 *2 (D.Or. Sept. 15, 2010) (constitutional claim raised for first time on appeal not fairly presented in the absence of exceptional

longer present these claims in state court, *see* Or. Rev. Stat. §§ 19.255 and 138.071, they are procedurally defaulted.

### 1.    Actual Innocence Exception

In an effort to overcome the procedural default of his claims, Karnes presents the declarations of Ondre J. Daniel and Bernard J. Sierzega as evidence of his actual innocence of the crimes for which he was convicted.[4]  The declarations state, in relevant part:

> Charles Karnes had nothing to do with the planning or commission of the assault and robbery of Charles Reid, in Wallace Marine Port, on or about February 22, 2001.  Mr. Karnes went to the park with the belief that the purpose of the trip was to meet and [sic] individual whom Charles Reid was to purchase drugs from.
>
> Had I been contacted by Mr. Karnes' attorney I would have testified in court under oath to this fact.

(Respt.'s Exs. 119, 120.)  The Court finds this evidence does not constitute the kind of credible, reliable evidence required for the actual innocence exception to procedural default.

The actual innocence exception to procedural default is limited to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995)

---

circumstances).

[4]In his PCR deposition, Karnes refers to his co-defendants as Ondre J. Daniel and Bernard J. Sierzega.  (Respt.'s Ex. 124, at 13, 21.)  At trial, the State referred to the co-defendants as Karnes's brother, Jamal Karnes, and Bernard J. Sierzega (B.J.).  (*Id.* at 9.) It is not clear from the record whether Ondre J. Daniel and Jamal Karnes are the same individual.

(citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).   To be
credible, a claim of actual innocence must be supported with "new
reliable evidence-whether it be exculpatory scientific evidence,
trustworthy eyewitness accounts, or critical physical evidence-that
was not presented at trial."  *Schlup*, 513 U.S. at 324 ; *House v.
Bell*, 547 U.S. 518, 537 (2006).  It is not enough that the evidence
show the existence of reasonable doubt, a petitioner must show
"that it is more likely than not that no 'reasonable juror' would
have convicted him."  *Schlup*, at 329; *Johnson v. Knowles*, 541 F.3d
933, 937 (9th Cir. 2008)("miscarriage of justice exception is
limited to those *extraordinary* cases where the petitioner asserts
his innocence and establishes that the court cannot have confidence
in the contrary finding of guilt"); *Van Buskirk v. Baldwin*, 265
F.3d 1080, 1084 (9th Cir. 2001) ("the test is whether, with the new
evidence, it is more likely than not that no reasonable juror would
have found [petitioner] guilty").

The declarations of Ondre J. Daniel and B.J. Sierzega that,
had they been asked, they would have testified at Karnes's trial
that he was not involved in the assault fall short of satisfying
the *Schlup* standards for reliable and credible evidence of actual
innocence.  The Court interprets the declarations as implying both
individuals were available at the time of trial and were simply not
contacted by Karnes's attorney.  However, the record shows the
detective investigating the assault and robbery testified at trial

that he interviewed between 15 and 20 witnesses; that he put in over 80 hours in trying to locate the suspects, which didn't account for the time other investigators put in; and a number of suspects had yet to be located at the time of trial. (Respt.'s Ex. 105, at 25, 32-33.)  Furthermore, trial counsel's affidavit to the PCR trial court states that neither counsel nor the prosecution had been able to locate the co-defendants at the time of Karnes's trial. (Respt.'s Ex. 123, at 2.)  In addition, the co-defendants' declarations that Karnes did not participate in the assault are not supported with any evidence as to who was responsible for the assault and robbery.  If presented to a jury, the co-defendants assertions may have suggested the existence of reasonable doubt, but a petitioner asserting his actual innocence must show "that it is more likely than not that no 'reasonable juror' would have convicted him."  Based on the record, the Court does not find the co-defendants' affidavits credible, or sufficient to show no reasonable juror would have convicted Karnes and, therefore, finds Karnes has failed to satisfy the actual innocence exception to procedural default.

　　2.　Cause and Prejudice to Excuse Default

In *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), the Supreme Court held that a federal habeas petitioner who has failed to comply with a State's contemporaneous-objection rule at trial must show cause for the procedural default and prejudice attributable

thereto in order to obtain review of his defaulted constitutional claim. *See also Edwards,* 529 U.S. at 451 (showing of cause and prejudice may excuse procedural default). Karnes argues counsel's ineffective representation in failing to preserve the issue of the right to be heard, the right to be present, and the right to counsel of one's choice before the trial court constitutes cause and prejudice to excuse the procedural default of Ground One. (#38, at 7-8.)

In *Murray v. Carrier*, 477 U.S. 478, 488 (1986), the Supreme Court examined when attorney error constitutes "cause" to excuse a procedural default. The Court stated, "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Id.* at 488. The Court concluded, "[s]o long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland* [ ], we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Id*. In *Coleman*, the Court reiterated this standard explaining, "it is not the gravity of the attorney's error that matters, but that it constitutes a violation of the petitioner's right to counsel, so that the error must be seen as an external factor, *i.e.,*'imputed to the State.'" 501 U.S. at 754. The Court emphasized, "counsel's

ineffectiveness will constitute cause only if it is an independent constitutional violation." *Id.* at 755.  A petitioner must have presented his ineffective assistance of counsel claim to the state courts for adjudication in order to argue cause and prejudice from ineffective assistance of counsel.  *Carrier*, 477 U.S. at 489.

In state PCR proceedings Karnes was denied relief on his claims of ineffective assistance of counsel.  Karnes cannot establish that ineffective assistance of counsel is "cause" and prejudice to excuse his default on Ground One unless he can show the PCR court adjudication of his ineffective assistance of counsel claims was contrary to or an unreasonable application of established Supreme Court precedent.  For the reasons discussed in section III, below, the Court finds Karnes has failed to show the PCR adjudication was contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), and has thus failed to establish cause and prejudice to excuse his default.

Petitioner argues the deferential standard of review under the AEDPA does not apply when a petitioner presents ineffective assistance of counsel as cause and prejudice to excuse procedural default.  He argues the Court should review his claim that trial counsel's failure to secure his presence at the pre-trial status conference on November 23, 2001, constitutes deficient representation *de novo*.

The Supreme Court has not specified whether the deferential

23 - FINDINGS AND RECOMMENDATION -

standard of review under the AEDPA and § 2254, or *de novo* review should be applied to claims of ineffective assistance of counsel presented as cause to excuse procedural default. Nor has the issue been decided in the circuit courts. *See Clemons v. Luebbers*, 381 F.3d 744, 752-53 (8th Cir. 2004) (acknowledging but not deciding the issue because under either standard counsel was not ineffective); *Lee v. Davis*, 328 F.3d 896, 901-902 (7th Cir 2003) (same); *Orbe v. True*, 82 Fed.Appx. (4th Cir. 2003) (same, citing *Lee*); *Wilkins v. Strickland*, 2009 WL 257077 *9 FN9 (E.D.Cal) (same). However, the Supreme Court has established that federal habeas courts must give deference to state court adjudication of federal claims and that habeas review should not serve to re-adjudicate claims. *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011); *Calderson v. Thompson*, 523 U.S. 538, 555-56 (1998). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, at 786 (internal quotation and citation omitted).

Under *Carrier*, a petitioner is required to present his ineffective assistance of counsel claims to the state courts or he cannot argue cause and prejudice due to ineffective assistance of counsel. 477 U.S. at 489. Applying *de novo* review to claims presented as cause to excuse procedural default asks the federal court to review a claim under *Strickland*I that was previously

adjudicated by the state court under *Strickland*, in effect re-adjudicating Petitioner claim without regard to the results of the state court's decision on the merits.    This is inconsistent with Supreme Court jurisprudence, and renders the requirement that the claims be presented as independent constitutional violations in state court meaningless.

> In any event, in *Harrington*, the Supreme Court stated:
>
> Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew the materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.

*Id.* at 788 (internal quotation and citation omitted.)    Under *Strickland*, counsel's performance at the November 23, 2001, status conference must be evaluated in the context of the trial as a whole and pre-trial hearings including: the prior postponements and impact on witnesses; Petitioner's refusal to waive his 60-day rights; Petitioner's pro se affidavit to the trial court challenging the court's waiver of his 60-day rights under ORS 136.295 and his continued incarceration (Respt.'s Ex. 125); the approaching deadline on the statutory postponement; that appointed counsel was prepared for trial; that prospective counsel would not assume representation absent a postponement; that the trial court stated on November 23rd it would not move the trial date from December 4, 2001, and did not believe anything Petitioner might say

would change that decision.    (Respt.'s Exs. 103, 104.)    When

counsel's representation is reviewed in context, and as discussed

in section III, the Court finds that under either deferential

review or *de novo* review, Petitioner has not shown counsel's

representation fell below objective standards of reasonableness and

that he was prejudiced as a result.    Accordingly, he has not shown

cause and prejudice to excuse procedural default and federal habeas

review of the claims in Ground One is unavailable.

    B.   <u>Ground Two</u>

Karnes alleges the trial court violated his constitutional

rights, guaranteed by the Sixth and Fourteenth Amendments to the

United States Constitution, when it allowed the State to introduce

hearsay statements of the victim as "excited utterances" or "dying

declarations."    Karnes raised this claim as a state-law claim to

the Oregon Court of Appeals.    (Respt.'s Ex. 106.)    While his appeal

was pending, the Supreme Court decided *Crawford v. Washington*, 541

U.S. 36 (2004)(Sixth Amendment confrontation clause analysis), and

Karnes obtained permission from the court to file a supplemental

brief.    In the supplemental brief, he acknowledged the basis for

the claim was not preserved in the trial court, but he urged the

appellate court to exercise its discretion and review the claim as

one apparent on the face of the record.    (Respt.'s Ex. 108 at 2-9.)

The court of appeals affirmed without opinion, and Karnes did not

raise the claim in Ground Two in either his counseled or *pro se*

petition for review to the Oregon Supreme Court.    (Respt.'s Ex. 110, at 4; Ex. 111, at 1-2.)

The fact Karnes raised the *Crawford* claim to the Oregon Court of Appeals very shortly after *Crawford* was decided gives the Court pause to consider whether it was fairly presented to the Oregon Court of Appeals.    However, even assuming the claim was fairly presented to the Oregon Court of appeals, Karnes failed to raise the claim in both his counseled and *pro se* petitions for review to the Oregon Supreme Court.    Accordingly, the *Crawford* claim was not fairly presented to the Oregon Supreme Court.    *See* ORAP 9.05(4)(b). For this reason, and those stated in discussing the default of Ground One, Ground Two is procedurally defaulted and habeas review precluded.

III.  The Merits

Federal habeas review is available for the following ineffective assistance of counsel claims presented in Ground Six:

> (b):  Trial counsel failed to object to petitioner's absence from the November 23, 2001 court hearing;

> (c):  Trial counsel failed to take the necessary steps, including moving for a continuance at the November 23, 2001 hearing, and thus give petitioner an opportunity to obtain retained counsel.

A.    Standard of Review

Following passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), an application for a writ of habeas corpus shall not be granted unless the adjudication on the merits

in State court was:

> (1) contrary to, or involved an unreasonable application
> of, clearly established Federal law as determined by the
> Supreme Court of the United States; or
>
> 2)resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In *Williams v. Taylor*, 529 U.S. 362, 386-389

(2000), the Supreme Court construed this provision as requiring

federal habeas courts to be highly deferential to the state court

decisions under review. In *Cullen v. Pinholster*, ___ U.S. ___; 131

S.Ct. 1388, 1398-1402 (April 4, 2011), the Court reiterated the

highly deferential nature of federal habeas review, and limited

federal review "to the record that was before the state court that

adjudicated the claim on the merits."

The terms "contrary to" and "unreasonable application" have

independent meanings. *Sarausad v. Porter*, 479 F.3d 671, 676 (9th

Cir. 2007). A state court decision is "contrary to" clearly

established federal law if it is "in conflict with", "opposite to"

or "diametrically different from" Supreme Court precedent.

*Williams, v. Taylor*, 529 U.S. 362, 388 (2000). An "unreasonable

application" of clearly established Supreme Court law occurs when

"the state court identifies the correct governing legal principle

. . . but unreasonably applies that principle to the facts of the

. . . case." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir.

2004) *cert. denied*, 126 S. Ct. 484 (2005)(citing *Williams,* 529 U.S.

at 413). "A federal court making an 'unreasonable application' inquiry should ask whether the state court's application of federal law was objectively unreasonable." *Saurasad*, 479 F.3d at 676-77 (citing *Williams*, 529 U.S. at 409). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Woodford*, 537 U.S. at 24-25 (2002)(internal citations omitted). "[A] habeas court must determine what arguments or theories ... could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Pinholster*, 131 S.Ct. at 1402 (citing *Harrington v. Richter*, 562 U.S. ___,___, 131 S.Ct. 770, 786 (2011)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, ___ U.S. ___, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n. 3 (9th Cir. 2002). The decision of the state PCR trial court is the basis for review in the instant proceeding.

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert*, 393 F.3d at 974. It is well established that a claim of ineffective assistance of counsel is governed by the principles articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Pinholster*, 131 S.Ct. at 1403. Under *Strickland*, a petitioner must prove: 1) counsel's performance fell below an objective standard of reasonableness and, 2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. "Judicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and "a court must indulge [the] strong presumption that counsel made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 131 S.Ct. at 1407 (quoting *Strickland*) (internal quotation marks omitted.) The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances

at the time of representation. *Strickland*, 466 U.S. at 690.   In
addition, a doubly deferential standard of review applies to
federal habeas review of ineffective assistance of counsel claims.
*Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420 (2009);
*Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (deference
under § 2254 and deference under *Strickland*).

B.   Analysis

To prevail in the PCR proceedings, Karnes had to show the PCR
court that trial counsel's performance was deficient when he failed
to object to petitioner's absence from the November 23, 2001, court
hearing, or when he failed to take the necessary steps, including
moving for a continuance at the November 23, 2001, hearing, to give
petitioner an opportunity to obtain retained counsel, and that
Karnes was prejudiced as a result of either error.   He did not do
so.

At the outset of the PCR proceeding, the PCR court assured
Karnes, who was proceeding *pro se*, that it had received his entire
file and had read everything in the file, including exhibits.[5]
(Respt.'s Ex. 130, at 1.)   The PCR record included the transcript
of the November 23, 2001, pre-trial status hearing, at which the

_____

[5]The PCR exhibits included an affidavit Karnes sent the trial
court seeking release pursuant to Oregon's 60-day rule, in which he
states "newly appointed counsel attempted to get me to voluntarily
WAIVE my rights to release under ORS 136.290 and agree to a
continuance of my trial date, which I refused to do."  (Respt.'s
Ex. 125, at 2.)   In the affidavit, Karnes challenged the trial
court's authority to delay his trial without his consent.  (*Id.*)

court denied a continuance.

The transcript of the November 23 hearing reveals: (1) the trial court noted Karnes "filed an affidavit seeking release on the 60-day matter," (Respt.'s Ex. 104, at 2-3); (2) Mr. Ahmed told the trial court his firm had funds in trust but could not undertake representation of Karnes without a continuance because they could not be prepared by the December 4, 2001 trial date; that he talked with the prosecutor who objected to a continuance; that he did not bring motions, affidavits and orders because the firm was not yet retained and didn't have staff that day to prepare them; that the Karnes family contacted the firm several months earlier, but confusion about Karnes name led to delays in the firm contacting him, (id., at 4-5; 10-11); (3) the prosecutor voiced strong objection to a continuance due to the complexity of arranging for out of state witnesses and the physician witness having cleared his calendar; and to Karnes previously refusing to waive the 60-day trial rights and contesting the previous continuance, (id. at 5-11); (4) appointed counsel stated he was ready to go to trial but was awaiting the court's decision on the continuance matter to know if he would be continuing on as counsel, (id. at 11-12); (5) Mr. Ahmed raised the issue of whether Karnes should be heard on the continuance matter but, when the court asked if he wanted Karnes brought to the hearing, he reiterated he did not represent Karnes, (id. at 12-13).

In an affidavit to the PCR court, trial counsel stated, in relevant part:

> 5.   Petitioner never asked me to file a motion to continue.  He did mention to me that he was looking in to hiring Paul Ferder's firm to represent him. When James Ahmed appeared at the November 23, 2001, status conference, he told me that his firm had been funded but would not be able to represent petitioner unless the case was continued.  I had not received any authority from petitioner to move to continue his case and did not do so.
>
> 6.   I was fully prepared to go to trial.  I do not believe that the outcome of petitioner's case would have been any different if he were represented by other counsel.
>
> 7.   Prior to the trial, neither the prosecutor nor I were able to locate petitioner's co-defendants, Jamal Karnes and B.J. Sierzega.   They had apparently fled the area.

(Respt.'s Ex. 123 at 2.)

In his PCR deposition, Karnes stated he discussed efforts to retain counsel with his appointed counsel, but admitted he did not file a motion for new counsel or a motion for continuance prior to the November 23, 2001, status hearing. (Respt.'s Ex. 124, at 15-18.)  Karnes also acknowledged he refused to sign a 60-day trial waiver approximately one and one half months prior to the November 23 hearing, (*id.* at 16), and that he did not discuss moving for a continuance in order to secure new counsel until the morning of trial, (*id.* at 18).

Karnes argued to the PCR court that "under *Kentucky v. Spencer*, 107 S. Ct. 2658, even in situations where the defendant is

33 - FINDINGS AND RECOMMENDATION -

not actually confronting witnesses or evidence against him, it's a due process right to be present in his own person wherever his presence has relation reasonably substantial to the fullness of his opportunity to defend against his charge." (Respt.'s Ex. 130 at 5-6.)  He also argued, *"Lewis vs Gillette*, 13th Supreme Court 136 says after indictment found, nothing shall be done in absence of the petitioner, or the prisoner.  That's along the same lines." (*Id.*)  And, citing state law, he argued he wasn't given the opportunity to have counsel of his choosing.  (*Id.*)

At the end of the PCR trial and on the record, the PCR court made, in relevant part, the following findings:

> Clearly the firm you wanted to hire had gotten some money, but they were never counsel of record in this case and never appeared as counsel of record in this case because there was a condition on that employment agreement.
>
> * * *
>
> The status conference, I'm also finding that you were not constitutionally entitled to be there.  It's a status conference, there were no motions ordinarily scheduled before the court.  It was to find out, and every county has some process that the assignment gets made so people basically get scheduled.  Your lawyer was - your court appointed lawyer was still your court appointed lawyer. He did not have, in fact have had a prior conversation and been you indicated you were not finding the (INAUDIBLE) had been waived.  It had not been signed, the court had allowed an extension for a finding of good cause, that extension was over.  He was prepared to try the case.  I do not find grounds for post conviction relief.  I also having read the case don't find that he was inadequate in any way.  I understand it didn't turn out the way you would have liked it to turn out, but I do not find that anything he did was inappropriate or inadequate.

34 - FINDINGS AND RECOMMENDATION -

(Respt.'s Ex. 130, at 11-12).   In its general judgment denying relief the PCR court specified: "status conf - [defendant] did not have right to be present. Retained att. never of record. Shackles not visible to jury per evidence. Proper objection to consec. sent. Proper investig. to find co-[defendants]." (Respt.'s Ex. 131.)

The PCR court findings are presumed to be correct absent Petitioner presenting clear and convincing evidence to the contrary.   28 U.S.C. § 2254(e)(1).   Petitioner has not met this burden, and upon review of the PCR record, the Court finds there is evidence to support the PCR court's findings.

In sum, the PCR court found trial counsel was prepared for trial and "having read the case d[id]n't find that [counsel] was inadequate in any way."   (Respt.'s Ex. 130, at 12.) In his PCR deposition, Karnes admitted he refused to waive his 60 day rights one and one half months prior to the November 23rd hearing.  At the November 23rd hearing, the trial court noted there were no motions for new counsel or for a continuance to seek counsel before the court, and the record shows Karnes filed a pro se affidavit with the trial court on October 29th, objecting to his case being continued for good cause and clearly stating he had "steadfastly refused" to waive his rights under the 60 day rule.  (Respt.'s Ex. 125.)   Karnes has not shown the PCR court's adjudication was contrary to or an unreasonable application of *Strickland*, and the Court does not find the PCR court adjudication of the ineffective

assistance of counsel claims to be objectively unreasonable. Accordingly, habeas relief is not available on claims 6(b) and (c), and the procedural default of Claims One and Two cannot be excused on the basis of ineffective assistance of counsel.   28 U.S.C. § 2254(d); *Coleman*, 501 U.S. at 755; *Murray*, 477 U.S. at 488.

### CONCLUSION

For the reasons stated above, the Amended Petition for Writ of Habeas Corpus (#11) should be DENIED, and judgment should enter DISMISSING this case with prejudice.   The Court further recommends a Certificate of Appealability not be issued as Karnes has not made a substantial showing of a denial of a constitutional right as required under 28 U.S.C. § 2253(c)(2).

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.   If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.   When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

### NOTICE

A party's failure to timely file objections to any of these

36 - FINDINGS AND RECOMMENDATION -

findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendations are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 8th day of February, 2012

Paul Papak
United States Magistrate Judge